**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-02622-TPO

GEORGE WILLIAMS LLLP,

Plaintiff,

v.

ROTO-ROOTER SERVICES COMPANY.

Defendant.

ROTO-ROOTER SERVICES COMPANY,

Third-Party Plaintiff,

v.

DENVER SEWER AND WATER and AFFORD-A-ROOTER, INC.

Third-Party Defendants.

---

**AMENDED THIRD-PARTY COMPLAINT**

---

Defendant and Third-Party Plaintiff Roto-Rooter Services Company, by and through its counsel, Hall & Evans, LLC, files this *Amended Third-Party Complaint* against Third-Party Defendants Denver Sewer and Water ("DS&W") and Afford-A-Rooter, Inc. ("Afford-A-Rooter") (collectively, DS&W and Afford-A-Rooter referred to as "Third-Party Defendants"), as follows:

**PARTIES**

1. Third-Party Plaintiff Roto-Rooter Services Company is an Iowa corporation authorized to do business in Colorado, with its principal office located at 255 E 5th St Ste 2500, Cincinnati, OH 45202.

2. Third-Party Defendant Denver Sewer and Water is a Colorado corporation with its principal office located at 10860 Dover Street, Suite 2300, Westminster, CO 80031-6162.

3. Third-Party Defendant Afford-A-Rooter, Inc., is a Colorado corporation with its principal office located at 10860 Dover Street, Suite 2300, Westminster, CO 80031-6162.

**JURISDICTION AND VENUE**

4. This Court has personal jurisdiction over the Third-Party Defendants because they (a) did business in the State of Colorado at all times material to this action; (b) purposefully availed themselves of the rights and privileges of the State of Colorado at times material to this action; and (c) performed, in whole or in part, the allegedly tortious or other wrongful acts and omissions described below, resulting in injury, damages, loss, or other consequences, in the State of Colorado.

5. This Court has subject matter jurisdiction over this matter and the controversies described in this Complaint.

6. Venue is proper in Boulder County, Colorado, pursuant to C.R.C.P. 98, because:

(a) the real property that is the subject of this action is located in Boulder;
(b) the agreements that are the subject of this action was entered into, performed, and/or breached in Boulder; and/or
(c) some of the tortious or otherwise wrongful conduct described elsewhere in this Complaint occurred in and/or had consequences and caused injury, damages, or losses in Boulder.

**THIRD-PARTY DEFENDANTS' IMPUTED, JOINT, VICARIOUS AND/OR ALTER EGO LIABILITY**

7. According to the Colorado Secretary of State records, Third Party Defendants are Colorado corporations that share the same principal office address, the same registered agent, and the same registered agent address. Upon information and belief, Third Party Defendants have at least one common corporate principal and owner. Upon information and belief, the two entities have utilized the same business phone number. Both Third Party Defendants are engaged in the business of providing commercial plumbing services in Colorado.

8. Upon information and belief, Third-Party Defendants were, at relevant times, the alter ego of one another, and/or the agents of one another, acting within the scope and in furtherance of such alter ego or agency, with the authority, consent, and/or approval of the other, for the common purpose of providing plumbing services to the Project, including obtaining any and all necessary permit(s) for the Plumbing Work.

9. To wit, while DS&W provided a certificate of insurance, performed plumbing services, and submitted an invoice for the Plumbing Work, it was Afford-A-Rooter that ultimately applied for and obtained the necessary permit for the Plumbing Work, and received a letter of completion from the City of Boulder indicating the Plumbing Work passed final inspection.

10. As such, Third-Party Defendants are liable (whether by imputed liability, joint and several liability, and/or vicarious liability) for each other's conduct, acts, omissions, breaches, and obligations, related to the Project, set forth herein.

**GENERAL ALLEGATIONS**

11. This litigation arises out of allegations of breach of contract asserted by Plaintiff George Williams LLLP ("Plaintiff") against Defendant Roto-Rooter.

12. At all times relevant, Plaintiff was the owner and developer of the Boulder Broker Inn restaurant and bar, located at 555 30th Street, Boulder, Colorado.

13. Upon information and belief, Plaintiff desired to remodel portions of the Boulder Broker Inn (the "Project").

14. In or about August 2023, Ross Goldberg, who is, upon information and belief, a representative of Plaintiff, contracted with Roto-Rooter to provide certain plumbing services at the Project (the "Plumbing Work").

15. The Plumbing Work included replacing 115 feet of damaged pipe and completing a portion of the drainage system.

16. Subsequently, Roto-Rooter engaged Denver Sewer and Water ("DS&W"), as a subcontractor to perform the Plumbing Work, pursuant to a standing *Master Services Agreement*, by and between DS&W and Roto-Rooter, dated April 28, 2021 ("MSA").

17. By its express terms, the MSA "covers all jobs performed by [DS&W] for Roto-Rooter."

18. Paragraph 11 of the MSA expressly required DS&W to "procure all permits and licenses, pay all charges, fees and taxes, and give all notices necessary and incidental to the due and lawful execution of the work for the Project."

19. DS&W provided plumbing services to the Project in furtherance of the Plumbing Work.

20. On or about September 6, 2023, DS&W invoiced Roto-Rooter for the plumbing services.

21. One of the line items on the invoice was for "[o]btaining and purchasing all required permits" as necessary to complete the plumbing services for the Project.

22. On or about December 20, 2023, Afford-A-Rooter applied to the City of Boulder for a permit regarding the Plumbing Work at the Project.[1]

23. On or about January 8, 2024, the City of Boulder issued to Afford-A-Rooter a permit regarding the Plumbing Work at the Project.[2]

24. City of Boulder Planning & Development Services sent Afford-A-Rooter a "Letter of Completion" dated January 11, 2024, regarding the permit and the approval of final inspections for the Plumbing Work at the Project.

25. By its Complaint, Plaintiff alleges that, after the work was completed, it learned that the restaurant and bar service could not commence as planned at the Boulder Broker Inn because the Plumbing Work had been performed without obtaining the necessary permit(s).

26. By its Complaint, Plaintiff alleges that it was unable to obtain a liquor license until the permitting issue was remedied.

27. By its Complaint, Plaintiff alleges that a permit was subsequently applied for, final approval of the Plumbing Work was obtained, and a liquor license was issued, such that business operations began nearly one month after the scheduled date.

28. By its Complaint, Plaintiff asserts that the failure to pull a permit delayed the opening of the restaurant and bar and caused significant damages.

29. To the extent that Plaintiff's allegations against Roto-Rooter are ultimately proven true, which Roto-Rooter denies, then Roto-Rooter contends that Plaintiff's damages were caused, in whole or in part, by DS&W's acts or omissions in the performance of the Plumbing Work, and specifically by the failure to obtain any and all necessary permit(s) for the Plumbing Work at the Project.

30. To the extent that Plaintiff's allegations against Roto-Rooter are ultimately proven true, which Roto-Rooter denies, then Roto-Rooter contends that Plaintiff's damages were caused, in whole or in part, by Afford-A-Rooter's acts or omissions in the performance of the Plumbing Work and specifically by the failure to obtain any and all necessary permit(s) for the Plumbing Work at the Project.

31. Under the terms of the MSA (paragraph 14), DS&W is obligated to indemnify and hold Roto-Rooter harmless, as follows:

---

[1] According to City of Boulder Planning & Development Services on-line records.

[2] According to City of Boulder Planning & Development Services on-line records.

> *INDEMNIFICATION. Subcontractor shall save harmless and fully indemnify Roto-Rooter and its affiliates and their respective shareholders, directors, officers, agents and employees from any and all loss, liability, damage, cost, expense (including attorneys' fees and expenses) or claim that arises out of or in connection with (i) Subcontractor's (or its agents, servants, employees or subcontractors) acts or omissions on a Project including, but not limited to, damage to property, business interruption, death or injury to persons (including employees of Subcontractor), … , or (ii) breach of any provision of this Agreement.*

32. To the extent that Plaintiff's allegations against Roto-Rooter are ultimately proven true, which Roto-Rooter denies, then Roto-Rooter contends that the failure to obtain necessary permit(s) is an "omission" under the MSA (paragraph 14), thereby giving rise to DS&W's obligation to indemnify and hold harmless Roto-Rooter with respect to all claims and damages asserted by Plaintiff, including without limitation attorney fees and costs.

**First Claim for Relief**
**(Breach of Contract)**

33. Roto-Rooter incorporates by reference paragraphs 1 through 32 of its Amended Third-Party Complaint as though fully set forth herein.

34. Roto-Rooter contracted with DS&W to perform the Plumbing Work, pursuant to a standing *Master Services Agreement*, by and between DS&W and Roto-Rooter, dated April 28, 2021 ("MSA").

35. By its express terms, the MSA "covers all jobs performed by [DS&W] for Roto-Rooter."

36. Paragraph 11 of the MSA expressly required DS&W to "procure all permits and licenses, pay all charges, fees and taxes, and give all notices necessary and incidental to the due and lawful execution of the work for the Project."

37. Roto-Rooter substantially complied with its contractual obligations to DS&W.

38. DS&W provided plumbing services to the Project in furtherance of the Plumbing Work.

39. By its Complaint, Plaintiff alleges that a permit was not timely pulled in connection with the Plumbing Work, and that such failure caused Plaintiff damages.

40. To the extent that Plaintiff's allegations against Roto-Rooter are ultimately proven true, which Roto-Rooter denies, then Roto-Rooter contends that Plaintiff's damages were caused,

in whole or in part, by DS&W's acts or omissions in DS&W's performance of the Plumbing Work, and specifically by the failure to obtain any and all necessary permit(s) for the Plumbing Work at the Project.

41. To the extent that Plaintiff's allegations against Roto-Rooter are ultimately proven true, which Roto-Rooter denies, then Roto-Rooter contends that Plaintiff's damages were caused, in whole or in part, by DS&W's breach of its contract with Roto-Rooter, by the failure to obtain any and all necessary permit(s) for the Plumbing Work at the Project.

42. Upon information and belief, Third-Party Defendants were, at relevant times, the alter ego of one another, and/or the agents of one another, for the common purpose of providing plumbing services to the Project, including obtaining any and all necessary permit(s) for the Plumbing Work.

43. As such, Third-Party Defendants are liable for each other's conduct, acts, omissions, breaches, and obligations, related to the Project.

44. To the extent that Plaintiff's allegations against Roto-Rooter are ultimately proven true, which Roto-Rooter denies, Roto-Rooter has incurred and will continue to incur damages as a direct and proximate result of DS&W's breach of contract, in an amount to be determined at trial.

**Second Claim for Relief**
**(Contractual Indemnity)**

45. Roto-Rooter incorporates by reference paragraphs 1 through 44 of its Amended Third-Party Complaint as though fully set forth herein.

46. Roto-Rooter contracted with DS&W to perform the Plumbing Work, pursuant to a standing *Master Services Agreement*, by and between DS&W and Roto-Rooter, dated April 28, 2021 ("MSA").

47. By its express terms, the MSA "covers all jobs performed by [DS&W] for Roto-Rooter."

48. Under the terms of the MSA (paragraph 14), DS&W is obligated to indemnify and hold Roto-Rooter harmless, as follows:

> *INDEMNIFICATION. Subcontractor shall save harmless and fully indemnify Roto-Rooter and its affiliates and their respective shareholders, directors, officers, agents and employees from any and all loss, liability, damage, cost, expense (including attorneys' fees and expenses) or claim that arises out of or in connection with (i) Subcontractor's (or its agents, servants, employees or subcontractors) acts or omissions on a Project including, but not*

> *limited to, damage to property, business interruption, death or injury to persons (including employees of Subcontractor), … , or (ii) breach of any provision of this Agreement.*

49. By its Complaint, Plaintiff alleges that a permit was not timely pulled in connection with the Plumbing Work, and that such failure caused Plaintiff damages.

50. To the extent that Plaintiff's allegations against Roto-Rooter are ultimately proven true, which Roto-Rooter denies, then Roto-Rooter contends that the failure to obtain necessary permits is an "omission" under the MSA (paragraph 14), thereby giving rise to DS&W's obligation to indemnify and hold harmless Roto-Rooter with respect to all claims and damages asserted by Plaintiff, including without limitation attorney fees and costs.

51. To the extent that Plaintiff's allegations against Roto-Rooter are ultimately proven true, which Roto-Rooter denies, then Roto-Rooter contends that DS&W has a contractual obligation under the terms of the MSA to indemnify and hold Roto-Rooter harmless with respect to all claims and damages asserted by Plaintiff, including without limitation attorney fees and costs.

52. Upon information and belief, Third-Party Defendants were, at relevant times, the alter ego of one another, and/or the agents of one another, for the common purpose of providing plumbing services to the Project, including obtaining any and all necessary permit(s) for the Plumbing Work.

53. As such, Third-Party Defendants are liable for each other's conduct, acts, omissions, breaches, and obligations, related to the Project, set forth herein.

54. Roto-Rooter has requested that Third-Party Defendants indemnify Roto-Rooter, with respect to all claims and damages asserted by Plaintiff, including without limitation attorney fees and costs.

55. To date, Third-Party Defendants have failed and/or refused to indemnify Roto-Rooter.

56. To the extent that Plaintiff's allegations against Roto-Rooter are ultimately proven true, which Roto-Rooter denies, Roto-Rooter has incurred and will continue to incur damages as a direct and proximate result of DS&W's breach of contractual indemnity, in an amount to be determined at trial.

**Third Claim for Relief**
**(Contribution – DS&W)**

57. Roto-Rooter incorporates by reference paragraphs 1 through 56 of its Amended Third-Party Complaint as though fully set forth herein.

58. Plaintiff seeks to recover damages from Roto-Rooter for damages allegedly resulting from defects and deficiencies in the Plumbing Work at the Project.

59. Pursuant to C.R.S. § 13-50.5-102, Roto-Rooter has a right to contribution from DS&W for its *pro rata* share of damages, alleged by Plaintiff against Roto-Rooter, resulting from DS&W's performance of the Plumbing Work.

60. To the extent that the allegations pertaining to Roto-Rooter in Plaintiff's Complaint are proven true, which Roto-Rooter denies, DS&W is responsible for any and all damages incurred by Roto-Rooter as a result of DS&W's performance of the Plumbing Work.

61. To the extent that the allegations pertaining to Roto-Rooter in Plaintiff's Complaint are proven true, which Roto-Rooter denies, Roto-Rooter is entitled to contribution from DS&W to the extent Roto-Rooter pays more than its *pro rata* share of liability for damages.

62. Upon information and belief, Third-Party Defendants were, at relevant times, the alter ego of one another, and/or the agents of one another, for the common purpose of providing plumbing services to the Project, including obtaining any and all necessary permit(s) for the Plumbing Work.

63. As such, Third-Party Defendants are liable for each other's conduct, acts, omissions, breaches, and obligations, related to the Project.

**Fourth Claim for Relief**
**(Contribution – Afford-A-Rooter)**

64. Roto-Rooter incorporates by reference paragraphs 1 through 63 of its Amended Third-Party Complaint as though fully set forth herein.

65. Plaintiff seeks to recover damages from Roto-Rooter for damages allegedly resulting from defects and deficiencies in the Plumbing Work at the Project.

66. Pursuant to C.R.S. § 13-50.5-102, Roto-Rooter has a right to contribution from Afford-A-Rooter for its *pro rata* share of damages, alleged by Plaintiff against Roto-Rooter, resulting from Afford-A-Rooter's performance of the Plumbing Work.

67. To the extent that the allegations pertaining to Roto-Rooter in Plaintiff's Complaint are proven true, which Roto-Rooter denies, Afford-A-Rooter is responsible for any and all damages incurred by Roto-Rooter as a result of Afford-A-Rooter's performance of the Plumbing Work.

68. To the extent that the allegations pertaining to Roto-Rooter in Plaintiff's Complaint are proven true, which Roto-Rooter denies, Roto-Rooter is entitled to contribution from Afford-A-Rooter to the extent Roto-Rooter pays more than its *pro rata* share of liability for damages.

69. Upon information and belief, Third-Party Defendants were, at relevant times, the alter ego of one another, and/or the agents of one another, for the common purpose of providing plumbing services to the Project, including obtaining any and all necessary permit(s) for the Plumbing Work.

70. As such, Third-Party Defendants are liable for each other's conduct, acts, omissions, breaches, and obligations, related to the Project.

**Fifth Claim for Relief**
**(Negligence - DS&W)**

71. Roto-Rooter incorporates by reference paragraphs 1 through 70 of its Amended Third-Party Complaint as though fully set forth herein.

72. Third-Party Defendant, DS&W, owed a duty of care to perform the Plumbing Work in a good and workmanlike manner and in accordance with all applicable building codes and ordinances, which included pulling all necessary permit(s).

73. To the extent the allegations pertaining to Roto-Rooter in Plaintiff's Complaint are proven true, which Roto-Rooter denies, DS&W was negligent and breached its duty of care.

74. To the extent the allegations pertaining to Roto-Rooter in Plaintiff's Complaint are proven true, which Roto-Rooter denies, Roto-Rooter has incurred and will continue to incur damages as a direct and proximate result of each of DS&W's negligence, and DS&W is liable to Roto-Rooter for damages in an amount to be determined at trial.

75. Upon information and belief, Third-Party Defendants were, at relevant times, the alter ego of one another, and/or the agents of one another, for the common purpose of providing plumbing services to the Project, including obtaining any and all necessary permit(s) for the Plumbing Work.

76. As such, Third-Party Defendants are liable for each other's conduct, acts, omissions, breaches, and obligations, related to the Project.

**Sixth Claim for Relief**
**(Negligence - Afford-A-Rooter)**

77. Roto-Rooter incorporates by reference paragraphs 1 through 76 of its Amended Third-Party Complaint as though fully set forth herein.

78. Third-Party Defendant, Afford-A-Rooter, owed a duty of care to perform the Plumbing Work in a good and workmanlike manner and in accordance with all applicable building codes and ordinances, which included pulling all necessary permit(s).

79. To the extent the allegations pertaining to Roto-Rooter in Plaintiff's Complaint are proven true, which Roto-Rooter denies, Afford-A-Rooter was negligent and breached its duty of care.

80. To the extent the allegations pertaining to Roto-Rooter in Plaintiff's Complaint are proven true, which Roto-Rooter denies, Roto-Rooter has incurred and will continue to incur damages as a direct and proximate result of Afford-A-Rooter's negligence, and Afford-A-Rooter is liable to Roto-Rooter for damages in an amount to be determined at trial.

81. Upon information and belief, Third-Party Defendants were, at relevant times, the alter ego of one another, and/or the agents of one another, for the common purpose of providing plumbing services to the Project, including obtaining any and all necessary permit(s) for the Plumbing Work.

82. As such, Third-Party Defendants are liable for each other's conduct, acts, omissions, breaches, and obligations, related to the Project.

WHEREFORE, Defendant/Third-Party Plaintiff Roto-Rooter requests that judgment be entered against Third-Party Defendants, jointly and severally, and in favor of Roto-Rooter, in an amount to be proven at trial including, without limitation, actual damages, litigation costs, attorneys' fees, pre-judgment and post-judgment interest, and for such other and further relief as the Court deems just and proper.

**JURY DEMAND**

**ROTO-ROOTER SERVICES COMPANY DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 31st day of January, 2025.

Hall & Evans, LLC.

*/s/ W. Andrew Figel*
Heather Thomas, Esq.
W. Andrew Figel, Esq.
1001 17th Street, Suite 300
Denver, CO 80202
Phone: (303) 628-3300
Fax: (303) 628-3368
thomash@hallevans.com
figelw@hallevans.com
*Attorneys For Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of January 2025, a true and correct copy of the foregoing was filed with the Court via CM/ECF and served on the below-listed parties:

| Robert C. Podoll, Esq.<br>Jacqui E.M. Hill, Esq.<br>Christopher R. Corkadel, Esq.<br>PODOLL & PODOLL, P.C.<br>5619 DTC Parkway, Suite 1100<br>Greenwood Village, CO 80111<br>Ph: (303) 861-4000<br>rob@podoll.net<br>chris@podoll.net | L. Kathleen Chaney, Esq.<br>LAMBDIN & CHANEY, LLP<br>4949 South Syracuse Street, Suite 600<br>Denver, Colorado 80237<br>Ph: (303) 799-8889<br>kchaney@lclaw.net |
|---|---|

*s/ Holly Rogers*
Holly Rogers, Legal Assistant